UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                                    :
GERALD OSCAR, *individually and on behalf of all others* :
*similarly situated,*                                               :
                                                                    :
                                      Plaintiff,                    :
                                                                    :
                   -v-                                              :
                                                                    :
BMW OF NORTH AMERICA, LLC et al.,                                   :
                                                                    :
                                      Defendants.                   :
                                                                    :
------------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED:  12  20  11

09 Civ. 11 (PAE)

OPINION & ORDER

**PAUL A. ENGELMAYER, District Judge:**

Plaintiff Gerald Oscar ("Oscar") moves for leave to amend his class action complaint against BMW of North America, LLC ("BMW") and its subsidiary MINI USA ("MINI"). The amendment would substantially overhaul the class definition and theory of damages, nearly three years after the start of this litigation. For the following reasons, Oscar's motion for leave to amend is denied.

**I.    Background**

The Court assumes familiarity with the underlying facts and procedural history of this case, which are detailed in the June 7, 2011 opinion (the "June Opinion") of the Hon. Richard J. Holwell, to whom this case was then assigned, denying Oscar's motion for class certification. *See Oscar v. BMW of North America, LLC*, 274 F.R.D. 498, 502–03 (S.D.N.Y. 2011). In the June Opinion, Judge Holwell denied Oscar's class certification motion in all respects. However, he granted Oscar leave to renew the motion "as to the New York sub-class in the event that he can make an appropriate showing on numerosity and predominance." *Id.* at 513. Oscar thereupon proposed to amend the class definition, and therefore the complaint, to make these

[1]

showings. On September 8, 2011, Judge Holwell set the briefing schedule for the instant motion.

Oscar's motion was filed on October 7, 2011, BMW's opposition on November 7, 2011, and

Oscar's reply on November 21, 2011.

Oscar's proposed amended complaint ("PAC") drops all of his claims except those

brought pursuant to New York General Business Law §§ 349 and 350 (the "§§ 349 and 350

claims") and on behalf of a New York class. *See* PAC ¶¶ 54–61, 62–65. Significant here, the

PAC would substantially alter the contours of that class. As presently defined, the New York

sub-class consists of:

> All consumers who purchased or leased new 2005, 2006, 2007, 2008, and 2009
> MINI vehicles equipped with Run-Flat Extended Mobility Technology tires
> manufactured by Goodyear and sold or leased in the State of New York whose
> Tires have gone flat and been replaced.

Cmplt. ¶ 41, Dkt. No. 1. In the PAC, plaintiff proposes to change the class definition to include:

> All consumers who purchased or leased new 2005, 2006, 2007, 2008, and 2009
> MINI Cooper S vehicles equipped with run-flat tires in the State of New York
> whose tires have gone flat and been replaced.

PAC ¶ 45. Thus, the new class would differ in two important respects from the New York sub-

class as presently constituted. The new class would be narrowed by focusing only on a single

model of MINI, the MINI Cooper S. But the class would also be significantly broadened by

bringing into the fold consumers who owned MINI Cooper S vehicles equipped with run-flat

tires ("RFTs") made not only by Goodyear, but by five additional manufacturers.

In support of his motion to amend, Oscar argues that: (1) the altered class definition is a

natural development occasioned by the discovery process and/or BMW's unwillingness or

inability to ascertain the number of vehicles equipped with Goodyear RFTs; (2) he could not

have reasonably sought to change the class definition (and thus amend the complaint) until the

June Opinion; (3) the PAC states viable claims amenable to class certification; and (4) the proposed new class definition does not prejudice BMW.

In opposition, BMW argues that: (1) Oscar was dilatory in conforming his proposed pleadings in the case to the facts; (2) the amendment would prejudice BMW at this late date; and (3) the PAC would still fail the predominance prong of the class certification inquiry, and the amendment would thus be futile.

## II.   Discussion

### A.   Applicable Standard for Motions to Amend

Federal Rule of Civil Procedure 15(a)(2) provides that leave to amend a complaint shall be "freely" given when "justice so requires," though "a district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200–01 (2d Cir. 2007). However, when a scheduling order has been entered which has restricted a party's ability to file an amended complaint, Rule 15's liberal standard must be balanced against the more stringent standard of Rule 16, under which such an order "may be modified only for good cause." Fed. R. Civ. P. 16(b)(4); *see also Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000); *Scott v. New York City Dep't of Corr.*, No. 10-931-cv, 2011 U.S. App. LEXIS 22168, at *2–3 (2d Cir. Nov. 2, 2011) (summary order).

Thus, "despite the lenient standard of Rule 15(a), a district court does not abuse its discretion in denying leave to amend the pleadings after the deadline set in the scheduling order where the moving party has failed to establish good cause." *Parker*, 204 F.3d at 340; *see also Holmes v. Grubman*, 568 F.3d 329, 334–35 (2d Cir. 2009). To show good cause, a movant must demonstrate that it has been diligent, *see Presbyterian Church of Sudan v. Talisman Energy,*

[3]

*Inc.*, 582 F.3d 244, 266–67 (2d Cir. 2009); *Grochowski v. Phoenix Constr.*, 318 F.3d 80, 86 (2d

Cir. 2003), meaning that, "despite its having exercised diligence, the applicable deadline could

not have been reasonably met." *Sokol Holdings, Inc. v. BMB Munai, Inc.*, No. 05-cv-3749, 2009

U.S. Dist. LEXIS 72659, at *24 (S.D.N.Y. Aug. 14, 2009) (citing *Rent-A-Center Inc. v. 47

Mamaroneck Ave. Corp.*, 215 F.R.D. 100, 104 (S.D.N.Y. 2003)).  A party fails to show good

cause when the proposed amendment rests on information "that the party knew, or should have

known, in advance of the deadline." *Sokol Holdings*, 2009 U.S. Dist. LEXIS 72659, at *24

(collecting cases); *see also Lamothe v. Town of Oyster Bay*, No. 08-cv-2078, 2011 U.S. Dist.

LEXIS 120843, at *15–16 (E.D.N.Y. Oct. 19, 2011).

        Here, BMW argues that: (1) Oscar unduly delayed filing his PAC and was not diligent in

revising his claims; (2) the PAC would cause it prejudice; and (3) the PAC is futile, because it

does not cure the predominance problems identified by Judge Holwell.  As now explained, the

Court agrees with BMW on the first two points; and while not basing its denial on the third,

futility, agrees that the PAC's new class definition would raise substantial issues with respect to

the predominance requirement.

### B.    Diligence Under Rule 16

        "Scheduling orders offer a degree of certainty in pretrial proceedings, ensuring that at

some point both the parties and the pleadings will be fixed and the case will proceed." *Lincoln v.

Potter*, 418 F. Supp. 2d 443, 454 (S.D.N.Y. 2006).  In this case, four scheduling orders set the

due dates for amended pleadings. On June 19, 2009, Judge Holwell signed an order directing

that amended pleadings be submitted by December 1, 2009.  Dkt. No. 29.  On April 6, 2010, he

issued an amended scheduling order stating that the date for filing amended pleadings was

"completed"—*i.e.*, that the time to amend had come and gone.  Dkt. No. 46.  On April 12, 2010,

[4]

he issued a revised order, also describing the time to file amended pleadings as "completed."

Dkt. No. 47. And, on April 28, 2011, nearly a year later, Judge Holwell issued yet another order

which, in pertinent part, again described the time in which to file amended pleadings as

"completed." Dkt. No. 74. Notably, three of these orders were entered *after* resolution of

BMW's and Goodyear's partially-successful motions to dismiss the complaint; the last was

issued while the motion for class certification was *sub judice*—by which time Oscar assuredly

knew the bases on which BMW contested class certification. These scheduling orders were not

unilaterally imposed by Judge Holwell. Each of the four was jointly proposed by the parties;

thus Oscar willingly bound himself to the deadlines therein.

Oscar claims diligence by emphasizing (1) Judge Holwell's June Opinion and (2)

BMW's repeated statements that it cannot determine exactly which, or how many, MINIs were

equipped with Goodyear RFTs. Significantly, however, Oscar admits that, since at least 2009,

he has known that BMW cannot identify specifically how many MINIs were equipped with the

Goodyear RFTs that were the focus of the class to date.[1] For more than a year thereafter, on

notice that BMW could not identify the membership or size of the putative class, Oscar pursued

this litigation before, finally, filing an unsuccessful motion to certify that class. Thus, it has now

taken Oscar more than two years, despite sufficient notice, to act to remedy the potential

numerosity problem afflicting the putative class that he knew of in 2009. This alone is sufficient

basis to determine that Oscar has not been diligent under Rule 16(b). "[T]he good cause

standard is not satisfied when the proposed amendment rests on information that the party knew,

or should have known, in advance of the deadline." *Sokol Holdings*, 2009 U.S. Dist. LEXIS

72659, at *24 (citing *Parker*, 204 F.3d at 340).

---

[1] BMW puts this date at September 22, 2009, more than two months *before* the deadline Judge
Holwell had set for amended pleadings.

Oscar attempts to paper over this problem by stating that BMW's inability to define the number of MINIs fitted with Goodyear RFTs "did not appear to have significant consequences until [the class certification motion] was denied." Oscar Br. 8. But where there is a barking lack of concrete evidentiary support for a required element of a case as pled—here, as to the numerosity requirement of Fed. R. Civ. P. 23(a)—the Rule 16(b) diligence requirement requires a party to do more than "wait and see" whether a Court will alert to that deficiency.

Here, BMW asserts, and Oscar does not dispute, that Oscar has been aware for more than two years of BMW's inability to produce documents that could support a finding of numerosity, yet has only now sought to remedy that situation by amending the class definition. This time lag precludes a finding of diligence. *See In re Wireless Tel. Servs. Antitrust Litig.*, 02-cv-2637, 2004 U.S. Dist. LEXIS 19977, at *16–19 (S.D.N.Y. Oct. 6, 2004) (Cote, J.) (denying leave to amend based on Rule 16 where scheduling orders "were entered after the plaintiffs had already faced one motion to dismiss, and after they had been given ample time to shape the pleadings on which they wished to conduct discovery and seek certification of a class.").

For much the same reasons, the Court denies Oscar's motion for leave to retain a new damages expert to flesh out his sole surviving theory of injury, to wit, that BMW's alleged misrepresentations or deceptive practices caused Oscar and other purchasers to pay more for their vehicles than they otherwise would have. *See* PAC ¶ 60. Evidently, until the June Opinion foreclosed his other theories of injury as inconsistent with the predominance requirement, Oscar did not intend to rely as heavily on this theory. *See Oscar*, 274 F.R.D. at 512 (finding that two of Oscar's three theories of injury were "foreclose[d]" by case law as a basis for a class action, but that the overpayment theory *may* state a cognizable injury). However, Oscar's initial complaint, filed nearly three years ago, clearly articulated this theory of injury:

[6]

> Had BMW NA disclosed all material information regarding the Tires and their
> placement and use on the MINIs to Plaintiff and the Sub-Class, they would not
> have purchased and/or leased MINIs equipped with the Tires, *or would have paid*
> *less for the MINIs.*

Cmplt. ¶ 79, Dkt. No. 1 (emphasis added). The fact that his initial complaint also pled other

theories does not relieve Oscar of the duty to have diligently pursued, during the 22-month

discovery window, an allegation squarely made by his complaint. Oscar does not put forward

any good reason for this lapse. Oscar therefore has been insufficiently diligent as to this theory

to justify allowing him to "use the process of amending [his] complaint to reopen discovery" to

establish a long-extant claim. *Orthocraft, Inc. v. Sprint Spectrum, LP*, No. 98-cv-5007, 2002

U.S. Dist. LEXIS 23048, *10 (E.D.N.Y. Nov. 16, 2002).

In sum, the Court concludes that Oscar's diligence in investigating and refining his

theories of liability and injury do not supply "good cause" to set aside the deadlines embodied in

the scheduling orders entered by Judge Holwell. Because Oscar has not complied with Rule 16,

his motion for leave to amend is denied.

### C.    Undue Prejudice

The Court independently concludes that, even if the more lenient standard of Rule 15

governed, it would deny Oscar's motion for leave to amend as unduly prejudicial. "[T]he

prejudice to the opposing party resulting from a proposed amendment [i]s among the 'most

important' reasons to deny leave to amend." *AEP Energy Servs. Gas Holding Co. v. Bank of*

*America, N.A.*, 626 F.3d 699, 725 (2d Cir. 2010) (citing *State Teachers Ret. Bd. v. Fluor Corp.*,

654 F.2d 843, 856 (2d Cir. 1981)). "Amendment may be prejudicial when, among other things,

it would require the opponent to expend significant additional resources to conduct discovery

and prepare for trial or significantly delay the resolution of the dispute." *AEP Energy Servs.*, 626

F.3d at 725 (internal quotation marks omitted). Such is the case "when a party wishes to

[7]

overhaul its entire litigation strategy" in the later stages of a litigation. *Lamothe*, 2011 U.S. Dist. LEXIS 120843, at *37. Oscar's PAC represents such an overhaul.

Oscar argues that the amendment would not prejudice BMW because (1) most relevant discovery in this case—*i.e.*, documents pertaining to Oscar himself and the Goodyear RFTs with which his MINI was equipped—has already been produced; (2) BMW was and is willing, regardless, to expend additional resources on this case, including on a summary judgment motion; and (3) this amendment does not create unfair surprise, because, among other things, the §§ 349 and 350 claims here parallel the extant claims (albeit as to a different class) and there was some exploration in discovery as to the factual basis for a claim involving *all* RFTs.[2] These arguments are unpersuasive.

As BMW correctly points out, Oscar's proposal to broaden the class to include RFTs manufactured not just by Goodyear but by all *six* manufacturers of RFTs installed on MINIs would necessitate considerable new discovery. BMW represents that it has retained an expert to analyze the failure characteristics of *Goodyear* RFTs, and that the "scope of that expert's engagement will be increased substantially" if the broader class definition is substituted and five other brands of RFTs are put at issue. The Court is persuaded that this is so. Importantly, Oscar's theory of the case is that BMW's failure to disclose shortcomings of RFTs constitutes a deceptive trade practice or false advertising under New York law. The PAC cites several alleged and purportedly material facts whose omission rendered BMW's marketing and advertising deceptive. These facts include, that (1) "[r]un-flat tires could not be repaired, only replaced, in

---

[2] Oscar's assertion that BMW would not suffer from unfair surprise presents, of course, a double-edged sword. It also reinforces that Oscar could have sought an amendment with a redefined class at an earlier stage of the litigation—*i.e.*, that he was dilatory in waiting until now to pursue a broader class embracing all six manufacturers of RFTs installed on MINIs. *See* Section II.B, *supra*.

[8]

the event of a small puncture," and (2) "[r]un-flat tires were highly susceptible to flats, punctures, and bubbles, and would fail at a significantly higher rate than conventional radial tires." PAC ¶¶ 57, 63. Oscar's claims therefore depend upon showing that these omitted disclosures are, indeed, true. Because the factual issues relating to the RFTs' durability, failure characteristics, and method of repair are central to Oscar's case, the Court does not see any fair or reliable way for these allegations in the PAC to be litigated other than to grant BMW leave to conduct additional expert, and, quite possibly, fact discovery on these potentially pivotal points.

Moreover, as Oscar acknowledges in a footnote, should the PAC be approved, he would need, and seek, to retain an *additional* expert to "show damages on a classwide basis." Specifically, he would seek to validate the PAC's central thesis that BMW's alleged misrepresentations or deceptive practices caused price inflation, such that Oscar and the class paid more for their vehicles than they would have had the asserted deficiencies been disclosed. *See* PAC ¶ 60. BMW asserts that Oscar would in fact deploy this expert to resuscitate, if possible, his claims as to the predominance requirement for class certification. But, as to either purpose, the retention of such an expert by Oscar would open up a major new area of discovery. Further, if Oscar were to engage such an expert, BMW would be entitled to retain a rebuttal expert, presumably an economist. These dueling experts would assuredly dispute whether, assuming proper disclosure, MINI consumers would have paid less—and if so, how much—for their vehicles, and whether this question can even be answered on a unitary basis as to all consumers. As BMW correctly observes, answering that question would almost certainly entail, at a minimum, undertaking potentially complex consumer surveys. Suits alleging false advertising or deceptive trade practices—in which the consumer's perception is key—"usually turn on the persuasiveness of a consumer survey." *Johnson & Johnson Vision Care, Inc. v. CIBA*

[9]

*Vision Corp.*, 348 F. Supp. 2d 145, 179 (S.D.N.Y. 2004) (quoting *Johnson & Johnson * Merck Consumer Pharmaceuticals Co. v. SmithKline Beecham Corp.*, 960 F.2d 294, 298 (2d Cir. 1992)). BMW, in particular, represents, credibly, that it would survey customers to root out "the various sources of information about RFTs, consumers' knowledge and awareness of the 'pros-and-cons' of RFTs, the multitudinous factors influencing consumers' motor-vehicle purchase (or lease) decisions, and the fact that the transactions at issue are the subject of individual negotiations." BMW Br. 18. This new area of litigation would inevitably protract this long-running case.

It is unpersuasive to respond, as Oscar does, that BMW was already "prepared to expend substantial time and effort regardless of whether Plaintiff amended the Complaint" by, for example, moving for summary judgment on one or more of his claims. The substantial additional discovery the PAC would necessitate would not obviate BMW's contemplated summary judgment motion or any existing burdens presented by this case. It would add to them.

In sum, the Court concludes that the substantial reconfiguration of the parameters of this case that Oscar's motion to amend proposes would "require [his] opponent to expend significant additional resources to conduct discovery," and would significantly "delay the resolution of the dispute." *AEP Energy Servs.*, 626 F.3d at 725. Oscar's motion for leave to amend is therefore denied for the independent reason that granting it at this late date would unduly prejudice BMW.

### D.    Futility

Finally, although the Court does not premise today's ruling on a finding of futility, the Court is skeptical that the PAC would in fact cure the failure of Oscar's current class action complaint to establish, as required by Fed. R. Civ. P. 23(b)(3), that common questions would predominate over individualized ones. Where "a plaintiff seeks to amend [his] complaint in

[10]

order to cure deficiencies in [his] motion for class certification, the futility inquiry focuses on whether the amendments will enhance the likelihood of class certification, rather than on whether they state a claim." *Duling v. Gristede's Operating Corp.*, 265 F.R.D. 91, 104 (S.D.N.Y. 2010) (citing *Orthocraft, Inc.*, 2002 U.S. Dist. LEXIS 23048, at *10); *see also Pierre v. JC Penney Co., Inc.*, No. 03-cv-4782, 2006 U.S. Dist. LEXIS 6471, at *20–21 (E.D.N.Y. Feb. 14, 2006). "[I]f after viewing the amendment in the light most favorable to the plaintiff, the court finds the proposed class cannot be certified under Rule 23, leave to amend will be denied." *Pierre*, 2006 U.S. Dist. LEXIS 6471, at *21; *see also Presser v. Key Food Stores Co-op., Inc.*, 218 F.R.D. 53, 56 (E.D.N.Y. 2003).

      In addition to finding that Oscar had failed to establish numerosity, the June Opinion also denied certification as to the New York sub-class on the §§ 349 and 350 claims on the ground that Oscar had not carried his burden to demonstrate that common issues of law or fact would predominate at trial over individualized ones. *See Oscar*, 274 F.R.D. at 512–13; Fed. R. Civ. P. 23(b)(3). Oscar is correct that dropping his theories of post-purchase injuries eliminates one large area of individualized proof noted in the June Opinion.[3] However, it is far from obvious that Oscar's legal claims based on the PAC's price-inflation theory are susceptible to classwide resolution based on common proof.

      On the contrary, a motion to certify a class on the §§ 349 and 350 claims as articulated in the PAC would appear to present an uphill battle. A private plaintiff suing under § 349 "must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially

---

[3] As an aside, the Court is puzzled as to why, if the PAC asserts only a purchase-price injury, Oscar has continued to limit his class definition to purchasers of MINIs who subsequently suffered flat tires. That additional qualification only makes the class smaller and its members harder to identify, and appears utterly unrelated to the theories of liability and damages that Oscar claims he would pursue in the PAC.

misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *City of New York v. Smokes-Spirits.com, Inc.*, 12 N.Y.3d 616, 621 (N.Y. 2009). Although § 349 "does not require proof of justifiable reliance, a plaintiff seeking compensatory damages must show that the defendant engaged in a material deceptive act or practice that caused actual, although not necessarily pecuniary, harm." *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 26 (N.Y. 1995). The "standard for recovery under [§ 350], while specific to false advertising, is otherwise identical to section 349." *Goshen v. Mut. Life Ins. Co.*, 98 N.Y.2d 314, 324 n.1 (N.Y. 2002).

One obvious issue as to predominance would be whether, given the hoary tradition in which individual customers haggle with dealers over prices of new cars, the omission of the disclosures that Oscar posits were required could reliably be shown to have truly raised all class members' purchase prices, let alone by a common amount. Oscar would need to show that the class members overpaid for MINIs with RFTs as a result of BMW's and MINI's deceptive practices. Any such claim would assuredly elicit a forceful response by the defense's experts, presumably economists and/or experts as to consumer purchasing practices as to such vehicles. *Compare, e.g., Orthocraft*, 2002 U.S. Dist. LEXIS 23048, at *6–8.

Further undermining Oscar's bid for class certification would be the fact that the PAC's claims (unlike those in the existing complaint) would now span six distinct brands of RFTs. It is far from clear that the impact on price would be identical across these brands, or across different model lines within the same brand.

Finally, Oscar's reconstituted class would require the Court to review, anew, whether the requirements of Fed. R. Civ. P. 23(a) are satisfied. Whether Oscar is adequate to represent the interests of class members who bought MINIs with tires other than Goodyear (*e.g.*, Dunlops)

[12]

would present a fair question. *See* BMW Br. 18 n.8. Conceivably, for example, discovery could reveal starkly different failure rates for the various brands of RFTs. This would raise both an issue as to predominance and an issue whether a lead plaintiff such as Oscar—with no personal stake as to five of the six tire brands—is an appropriate representative to vindicate the interests of class members who purchased MINIs fitted with one of those brands.

For these reasons, if the Court were not denying the motion to amend on grounds of lack of diligence and of prejudice, a searching inquiry into futility would be necessitated before the PAC could be accepted.

## CONCLUSION

For the foregoing reasons, Oscar's motion for leave to amend the complaint is denied. The Clerk of Court is directed to terminate the motion at docket number 77.

Additionally, the Court has set a conference in this case for January 27, 2012 at 12:00 pm in Courtroom 18C of the United States Courthouse, 500 Pearl Street, New York, New York 10007. The purpose of the conference is to set a schedule for briefing any summary judgment motion that the parties may wish to pursue or, in the alternative, to schedule a trial in this matter.

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: December 20, 2011
       New York, New York

[13]